# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESHA CARTER, | CASE NO. 1:05-CV-0211-LJO DLB-P |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION |
| v. | FOR SUMMARY JUDGMENT BE GRANTED |
| D. ADKINSON, | (Doc. 42) |
| Defendant. | OBJECTIONS DUE AUGUST 20, 2007 |

I.  Defendant's Motion for Summary Judgment

   A.  Procedural History

   Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's amended complaint, filed March 7, 2007, against defendant Adkinson ("defendant") for retaliation. On January 8, 2007, defendant filed a motion for summary judgment. Plaintiff filed an opposition on February 2, 2007 and defendant filed a reply on February 13, 2007. Plaintiff filed a sur-reply on March 2, 2007.

   B.  Legal Standard

   Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and

1

|   |   |
|---|---|
| 1 | admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material |
| 2 | fact. |

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

C.  Undisputed Facts[1]

1. Desha Cater is a state prisoner who, at all times relevant to this action, was in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at California State Prison Corcoran ("Corcoran"). Defendant's Ex. B.

2. At all times relevant to this action, Carter was confined in the Security Housing Unit

---

[1] Plaintiff did not file his own separate statement of disputed facts. However, plaintiff admitted and/or denied the facts set forth by defendant in his opposition. These undisputed facts are therefore taken from defendant's statement and plaintiff's opposition. A verified opposition to a motion for summary judgment may also be considered as an opposing affidavit for purposes of the summary judgment rule if it is based on facts within the pleader's personal knowledge. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

1 ("SHU") at Corcoran. Ex. B.

2  3. At all times relevant to this action, D. Adkinson was employed by CDCR as a correctional officer at Corcoran. Ex. A, ¶ 1.

4. At all times relevant to this action, Adkinson's duties at Corcoran involved inspecting inmate property to ensure it complied with the inventory requirements of Title 15 of the California Code of Regulations and Operation Procedure 806. Ex. A, ¶ 2.

5. On January 14, 2004, Carter's property was processed by Officer Alafa. Ex. C.

6. Inmates housed in SHU are only allowed to possess the property identified in Operational Procedure 806, section VII(C)(4). Ex., A ¶ 3; Ex. J.

7. If SHU inmate property is identified as unauthorized, the inmate has 30 days to acquire funds to send the property elsewhere. Failure to provide sufficient funds to cover the cost of shipping will result in the unauthorized property being disposed of pursuant to institutional procedures. Ex. A, ¶ 4.

8. On January 14, 2004, Carter was issued the property authorized by Alafa. Ex. C.

9. Carter also received a property disposition form, which described all of the property which was unauthorized and therefore confiscated pursuant to Title 15 of the California Department of Regulations and Operational Procedure 806. Ex. C.

10. The property disposition form issued to Carter indicated that all property identified as unauthorized may be disposed of pursuant to Title 15 of the California Department of Regulations, § 3191. Ex. C.

11. Adkinson did not participate in the processing or issuance of Carter's property on January 14, 2004. Ex. A, ¶ 5.

12. On January 21, 2004, Carter filed an inmate grievance regarding the issuance of his property which was received by Adkison on January 28, 2004. Ex. D; Ex. A ¶ 6.

13. On January 27, 2004, Carter filed a second grievance regarding the issuance of his property. Ex. E.

14. Between February 9, 2004 and April 17, 2004, Carter did not have any money in his trust account. Ex. F; Ex. A ¶ 14.

4

15. On February 11, 2004, Adkison responded to Carter's first grievance. Carter was advised that all unauthorized property must be mailed home at the inmate's expense or disposed of. In addition, Adkison indicated that the failure to acquire sufficient funds to send unauthorized property home by February 21, 2004, would result in property being subject to disposal. Ex. D; Ex. A ¶ 7.

16. On March 30, 2004, Adkinson issued Carter a CDC 128-B, which advised him of the pending disposal of his property. Adkinson advised Carter that: (1) failure to obtain sufficient funds for shipping the property by April 15, 2004, would result in the property being disposed of pursuant to institutional procedure; (2) the cost to ship the property would be approximately $60.00; and (3) Carter's trust account was overdrawn by $62.17. Ex. G; Ex. A ¶ 9.

17. In April 2004, Adkinson searched Carter's property for the items addressed in Carter's grievances dated January 21 and 27, 2004. Ex. A ¶ 10.

18. After conducting the search, Adkinson provided Officer J. Froley with all property addressed in Carter's grievances dated January 21 and 27, 2004.

19. On April 6, 2004, Froley issued Carter the property located by Adkinson. Ex. G.

20. After April 6, 2004, Adkinson believed Carter had been issued all of the property he was permitted to possess pursuant to Title 15 and Operational Procedure 806, as well as all of the property addressed in his grievances. Ex. A ¶ 12.

21. On April 12, 2006, Adkinson granted Carter's second appeal. At that time, Adkinson states that believed that all of Carter's grievances had been resolved. Ex. A ¶ 13; Ex. E.

22. On April 16, 2004, Adkinson authorized the disposal of Carter's property because Carter did not have the funds to ship his property home. Ex. A ¶ 15.

23. On April 16, 2004, Carter's property was disposed of. Ex. C.

24. On May 30, 2004, Adkison received Carter's third grievance. Ex. H; Ex. A ¶ 16.

    D.    <u>Retaliation Claim</u>

In his amended complaint, plaintiff alleges that defendant Adkinson destroyed his property in retaliation for his filing adminsitrative grievances. Plaintiff alleges that on January

14, 2004, he arrived at Corcoran and was placed in the SHU on November 12, 2003. Plaintiff alleges his personal property was filtered through the property room staff and searched. Plaintiff alleges he only received a small portion of his property on January 21, 2004 and was informed he would have to send the remainder home. Plaintiff filed an inmate appeal regarding his property on January 25, 2004. Plaintiff alleges that on January 27, 2004, defendant Adkinson came to his cell and told him that if he complained further, he would dispose of plaintiff's property. Plaintiff alleges that when he pursued his appeal, defendant disposed of his property in retaliation for his protected activity and for no legitimate penological purpose. Plaintiff continued to purse his appeal.

Plaintiff contends that on April 6, 2004, Officer Froley brought two (2) bags of his personal property to the building for which plaintiff signed. Plaintiff contends he received funds on April 27, 2004 to pay for the postage to send his unauthorized property home. Plaintiff contends that defendant disposed of his property on April 16, 2004 in violation of the regulation granting inmates 30 days in which to arrange for property to be sent home.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). The burden is on plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Id. at 808.

Defendant argues that he is entitled to judgment as a matter of law because he did not

take any adverse action based on protected conduct. Defendant argues that plaintiff's property was at risk after it was issued to him, which predates any of plaintiff's grievances. In addition, defendant contends he did not dispose of plaintiff's property until he believed that all of plaintiff's grievances were resolved. UF 17-22. Defendant states that he complied with departmental policies which were promulgated to address the disposition of property that inmates are not allowed to possess. After April 6, 2004, plaintiff had been provided with all of the property he was permitted to possess and his remaining property was disposed of because he was unable to send his property elsewhere. UF 17-20.

Plaintiff has offered no evidence that defendant disposed of his property to retaliate against him, only conjecture.[2] Plaintiff does not dispute that he was issued a property disposition form on January 14, 2004. The form indicated that all unauthorized property would be disposed of pursuant to Title 15 of the California Department of Regulations and Operational Procedure 806. In his appeal filed January 21, 2004, plaintiff complained that he did not have the funds to send his unauthorized property home and requested that the property be held. Ex. D. In the response dated January 28, 2004, defendant advised plaintiff that Operational Procedure 806 required unauthorized property to be mailed home within 30 days. *Id.* Noting that plaintiff had received his property on January 21, 2004, defendant advised plaintiff that he had until February 21, 2004 to obtain the funds to send his property home. *Id.*

Plaintiff contends that defendant came to his cell on January 27, 2004 and told plaintiff to stop filing complaints against him or he would dispose of plaintiff's property even if he had the required funds. Plaintiff's Opposition, p.3:21-25.

On January 27, 2005, plaintiff filed a second inmate appeal complaining that he had not been issued all of his property, including his writings. Ex. E. The appeal was partially granted in that plaintiff was issued his personal writings on April 6, 2004. *Id.*

On March 30, 2006, plaintiff was issued a CDC 128-B which informed plaintiff that he

---

[2] Plaintiff's amended complaint and declaration must be based on plaintiff's personal knowledge, not just mere belief, and must set forth facts admissible in evidence to which plaintiff is competent to testify. Johnson, 134 at 1399-1400; Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985) (citation omitted).

7

1 had until April 15, 2004 to obtain sufficient funds for shipping his property or the property would
2 be disposed of. Ex. G. At that time the balance in plaintiff's trust account was -$62.17 and the
3 cost of shipping was $60.00. *Id.*

4 Plaintiff's unauthorized property was disposed of on April 16, 2004. Ex. C. A deposit of
5 $60.00 was made to plaintiff's trust account on April 28, 2004. Ex. I.

6 Plaintiff fails to set forth evidence raising a triable issue of fact. Plaintiff bears the
7 burden of proving "that there were no legitimate correctional purposes motivating the actions he
8 complains of." Pratt, 65 F.3d at 808. Although plaintiff contends that defendant disposed of his
9 property in retaliation for filing a grievance, the evidence submitted demonstrates that plaintiff's
10 property was disposed of, pursuant to regulation, because he did not have sufficient funds to send
11 his property home. Indeed, based on the evidence, plaintiff was given more than 30 days to
12 obtain the necessary funds (January 14, 2004 through April 16, 2004).

13 While plaintiff argues that he was not given 30 days from April 6, 2004 to obtain the
14 required funds, he admits that he initially received his property on January 14, 2004 and was
15 advised that the remaining property was confiscated and would be disposed of pursuant to
16 regulation. *See* Ex. C. That plaintiff was issued additional property on April 6, 2004 does not
17 restart the time period relating to the confiscated property. Further, plaintiff has not set forth
18 evidence demonstrating that the disposal of his property was not motivated by *any* legitimate
19 correctional purpose. Finally, plaintiff neither alleges nor submits any evidence that his First
20 Amendment rights were chilled by the allegedly retaliatory property disposal. See Robinson, 408
21 F.3d at 568-69 (with respect to the chilling element, the proper inquiry is whether the act "would
22 chill or silence a person of ordinary firmness from future First Amendment activities.") (internal
23 quotation marks and citations omitted).

24 Plaintiff has not met his burden of demonstrating the existence of material factual
25 disputes. Accordingly, defendant is entitled to judgment as a matter of law on plaintiff's claim
26 that defendant disposed of his property in retaliation for filing grievances.

27     F.    Conclusion

28 Based on the foregoing, it is HEREBY RECOMMENDED that defendant's motion for

summary judgment, filed January 8, 2007 be GRANTED thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). On or before August 20, 2007, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **July 21, 2007**         /s/ **Dennis L. Beck**
                                                    UNITED STATES MAGISTRATE JUDGE